## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

---

ANDREW R. PERRONG, individually and on behalf of others similarly situated

               Plaintiff

vs.

ASPEN DENTAL MANAGEMENT, INC. and REX DIRECT NET INC.

        Defendants.

Case No. 2:22-cv-01234

---

### Plaintiff Andrew Perrong's Motion to Compel

Plaintiff Andrew Perrong moves this Court for an order compelling Rex Direct Net Inc. to produce the calling records of the pre-recorded calling conduct that is required for Mr. Perrong to prepare this matter for class certification and trial. This information is required to evaluate the numerosity, commonality, and typicality requirements of Rule 23(a), as well as the predominance requirement of Rule 23(b) and the only time to secure this information is now as this case has a single discovery period.

### Background

As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer

Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The TCPA makes it unlawful "to make any call…using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Mr. Perrong has also alleged a violation of the TCPA's restrictions against calling people on the National Do Not Call Registry. "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an

abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."  *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

Indeed, "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two classes). As one federal appeals court observed, "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Here, Mr. Perrong alleges that Rex Direct Net Inc. ("Rex Direct") sent pre-recorded telemarketing calls to him and putative class members in order to generate business for defendant Aspen and others, despite the fact that his number is on the National Do Not Call Registry. *See* First Amended Complaint, ECF No. 12. Mr. Perrong never consented to the calls. *Id.* at ¶ 3. Rex Direct is a telemarketer and lead generator that places automated, prerecorded calls for the purpose of generating leads it sells to dentists, including defendant Aspen. *Id.* at ¶ 21.

Mr. Perrong's telephone number (the "Number"), 215-947-XXXX, is on the National Do Not Call Registry and has been continuously since 2005. *Id.* at ¶ 26. That is a residential telephone number of the Plaintiff used for personal calls. *Id.* at ¶ 27. Rex Direct placed two telemarketing calls to Plaintiff on March 10, and 11, 2022. *Id.* at ¶ 35. The call began with a recorded message indicating that the caller, "Dental Services," was calling to "assist [the plaintiff] with finding the local dentist that meets the [Plaintiff's] needs" and requested that the call recipient press "Press 1" if they wanted to speak with a specialist to schedule an appointment. *Id.* at ¶ 40. Plaintiff pressed "1" to ascertain the identity of the caller and was then transferred to an automated system operated by Aspen Dental. *Id.* at ¶ 41-2.

Due to the *en masse* nature of the calling, the Plaintiff is pursuing this matter on behalf of the following putative classes:

> **Robocall Class:** All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per the call; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*Id.* at ¶ 61.

### Discovery and Requests at Issue

Discovery has confirmed many of the Plaintiff's allegations. As part of the discovery process Rex Direct confirmed that it used its own dialing system to make pre-recorded calls to consumers who data it purchased. The Plaintiff is filing this motion to require Rex Direct to produce the underlying calling data. The following request is at issue pursuant to LR 26.1(b):

**Request No. 15:** Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors:
   a) the date and time;
   b) the caller ID;
   c) any recorded message used;
   d) the result;
   e) identifying information for the recipient; and
   f) any other information stored by the call detail records.

**RESPONSE:** Defendant objects to this request to the extent it is overbroad, burdensome and harassing. Plaintiff's purported class itself is overbroad in that Defendant does not initiate a telephone call without first obtaining prior express written consent. As such, all class members provided prior express written consent to be contacted, including Plaintiff. Any documents requested relating to said class is harassing and not reasonably related to any claim or defense in this matter.

Defendant also objects to the scope of the request. Such broad and overreaching information is not needed to ascertain Plaintiff's alleged class. A sample of the requested information would be sufficient if necessary to ascertain the class alleged in Plaintiff's complaint. Requiring the full amount of data would put an undue burden on Defendant to obtain records from numerous different vendors, some of which may no longer be available to it.

As explained in Defendant's responses to interrogatories, the calls made to Plaintiff were the result of a small subset of opt-in leads (which included prior express written consents). Defendant, without waiving the above objections, provides responsive information for this subset of opt-in leads attached in documents produced herewith.

*See* Exhibit 1. Consistent with their discovery response, Rex Direct produced calling data for pre-recorded calls it made based on a single data purchase. It has confirmed that it has withheld all of the remaining calling data subject to the Plaintiff's putative class.

### Local Rule 26.1 Meet and Confer

The parties have met and conferred a number of times on these issues and narrowed the scope of their dispute as well as mooted several others. Counsel for the Plaintiff had a telephonic meet and confer on May 24, 2023 with counsel for Rex Direct and several pieces of follow up correspondence. However, the parties were not able to resolve their dispute with respect to the calling data.

## Argument

**I.      Rex Direct Should Be Compelled to Produce Records of Pre-Recorded Calls Made.**

Requesting a list of persons that were the recipients of telemarketing calls is a standard practice in TCPA class litigation. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class). Such information is relevant because it speaks to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, ascertainability, commonality, and predominance.  For these reasons, production of a call list and call is routinely ordered in courts across the country. *See, e.g., Warren v. Credit Pros Int'l Corp.,* No. 3:20-cv-763-TJC-MCR, 2021 U.S. Dist. LEXIS 79150, at *21 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because Defendant has not moved to bifurcate class and merits discovery and such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed.R.Civ.P."); *O'Shea v. Am. Solar Sol., Inc.,* No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016) (granting plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) (compelling production of call list);  *Gossett v. CMRE Fin. Servs.,* Case No. 15cv803 MMA (NLS), 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) (granting a motion

to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *see also, e.g.*, *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (Nolan, J.) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality").[1] As discussed below, the calling data goes directly to the elements necessary to certify a class.

For the Plaintiff to identify putative class members that may have a claim, he needs to obtain the call records, which will include all the recipients of those calls, at which point an expert analysis can be performed to identify class members.  *See Southwell v. Mortg. Investors Corp. of Ohio*, No. C13-1289 MJP, 2014 U.S. Dist. LEXIS 112362, 11-12 (W.D. Wash. Aug. 12, 2014) (denying the plaintiff's motion for class certification in a TCPA case holding, "nor does the submission of Plaintiffs' second expert, Anya Verkhovskaya, assist the Court in finding that the numerosity prerequisite has been met in this case.  Plaintiffs introduced her testimony purportedly to establish that it was possible to determine … the number of calls made to particular individuals after those individuals registered on the NDCNR or made do-not-call

---

[1] *See also Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (call logs and dialing lists relevant to numerosity and commonality); *Ossola*, 2015 WL 5158712, at *7 ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (same); *Thrasher v CMRE Financial Services, Inc.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb v. Healthcare Revenue Recovery Grp. LLC*, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (same).

requests.  Ms. Verkhovskaya's declaration is entirely prospective …. On this basis, her

declaration cannot constitute proof of the numerosity element required to establish that Plaintiffs

are entitled to prosecute a class action lawsuit.").  As one court summarized when granting a

motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which
> phone numbers were tied to cellular phones, which calls were for
> telemarketing purposes, which numbers were on the National Do
> Not Call Registry ("NDNCR") and which calls were made using an
> automatic telephone dialing system ("ATDS"). The information is
> therefore relevant to the numerosity, commonality, and typicality
> inquiries the Court will undertake to decide Plaintiff's motion for
> class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5,

2014).  Here, like *Mey*, the Plaintiff's expert will determine which calls qualify for membership

in the class in order to prepare this case for class certification.

Having complete calling data is necessary to evaluate a class certification motion. On

January 30, 2020, the District of New Jersey certified a TCPA class action like this one relying

extensively on expert witness testimony that reviewed calling logs in *Johnson v. Comodo Grp.,*

No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *21-22 (D.N.J. Jan. 31, 2020):

> Plaintiff's methodology is testable, reliable, and sufficiently capable of identifying
> putative class members.  It has already been used in other TCPA class actions.  *See,*
> *e.g., Shamblin v. Obama for Am.*, Civ. No. 13-2428, 2015 WL 1909765, at *3
> (M.D. Fla. Apr. 27, 2015); *Reyes v. BCA Fin. Servs., Inc.*, Civ. No. 16-24077, 2018
> WL 3145807, at *13 (S.D. Fla. June 26, 2018); *Krakauer v. Dish Network, LLC*,
> Civ. No. 14-333, 2015 WL 5227693, at *10 (M.D.N.C. Sept. 8, 2015).  Similarly,
> the vendors that Ms. Verkhovskaya plans to use, such as LexisNexis, have been
> reliably used in past TCPA litigations to identify telephone number
> users/subscribers and their addresses.  *See, e.g., McCurley v. Royal Seas Cruises,*
> *Inc.*, 331 F.R.D. 142, 159 (S.D. Cal. 2019) (approving the use of LexisNexis to
> identify class members and summarizing cases holding the same); *Krakauer*, 2015
> WL 5227693, at *8-10 (holding that Ms. Verkhovskaya's use of LexisNexis to
> identify putative TCPA class members is a reliable methodology and denying
> motion to exclude).

> Although some of the calls on the call log that Defendant produced and that Ms. Verkhovskaya plans to rely on fall outside the class definition, these calls appear to be statistically insignificant and filterable (*e.g.*, test calls placed to Defendant's employees and unconnected/incomplete calls). (D.E. 179 at 23.)   Calls to landline numbers can be similarly filtered.   (D.E. 115-6 ¶ 31.)   Furthermore, Ms. Verkhovskaya's reliance on the VICIdial system codes used in the call log is justified.

*Id.*  When discovery is not bifurcated, a plaintiff in a TCPA case must have the records of calling activity to prepare for trial to resolve the requestion of liability and damages. As another Court in this District held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
>  EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel should be granted here.

The Defendant's objections should be overruled. Rex Direct's first (and primary) objection is that it had consent to make the calls at issue and as such, the Plaintiff's proposed class is overbroad. However, this Court already denied Rex Direct's motion to strike class allegations. *See* ECF No. 24. As that Order made clear, "Consent is an affirmative defense to liability under the TCPA". *Id.* As such, if Rex Direct contends that it had consent to make any of the pre-recorded calls it made, then it should produce evidence of that consent.

A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission. *Id.* at ¶46.

The case law has made this clear. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent." Consistent with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir.

2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014).”). As another has held in a TCPA case when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, if Rex Direct intends to rely on any evidence of consent, it should produce it. It cannot have it both ways, claim that such evidence exists, fail to produce it and use that as a reason to not provide other discovery responses.

Indeed, the only evidence of consent that Rex Direct has produced relates to the single lead that was sold that contained the Plaintiff's telephone number. It was previously attached to Rex Direct's motion to dismiss. *See* ECF No. 16. However, such purported consent is invalid, even if someone did submit that information.[2] The TCPA and its accompanying regulations prohibit sellers, such as Aspen Dental and Rex Direct, from making telephone solicitations to "residential telephone subscribers" who have listed their telephone numbers on the National DNC Registry. *See* 47 C.F.R. § 64.1200(e), citing 18 F.C.C. Rcd. 14014, 14032, 14043 (2003); 47 U.S.C. §227(c)(5). Telemarketing calls to numbers listed on the DNC Registry are permissible only where the consumer has previously provided the telemarketer with his prior express *written* permission consenting to receive telemarketing calls from a *specific* "seller." *See* 47 C.F.R. § 64.1200(c)(2) (prohibits initiating any telephone solicitation to a "residential telephone subscriber" registered on the national do-not-call registry without a signed agreement authorizing receipt from a specific seller). *See* 47 C.F.R. § 64.1200(e) (citing 18 F.C.C. Rcd. 14014, 14032, 14043 (2003). Similarly, under the FCC's rules, prerecorded telemarketing calls

---

[2] Mr. Perrong did not and has submitted an affidavit averring as much. *See* ECF No. 21.

require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

The "opt-in" disclosure produced in defendant's purported consent does not provide for "prior express written consent," which the FCC defines, in part, as a signed writing "that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages[.]" 47 C.F.R. § 64.1200(f)(9) (emphasis added). Here, the purported opt-in website only mentions "Sun Sweepstakes" and some (unspecified and vague) "Marketing Partners." Such language is insufficient as a matter of law to give either Rex Direct the right to call the Plaintiff.

The website allegedly visited does not mention Aspen Dental, let alone Rex Direct. Before a telemarketer like Rex Direct can send such telemarketing calls, it must first obtain the consumer's written consent to receive such telemarketing calls *from a specific seller*. *See Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012) (recognizing that consent must include clear and conspicuous disclosure that the consumer is consenting to receive future telemarketing calls *from a specific seller*). The rationale for this rule is obvious. Without naming a specific seller, a telemarketer could rely on any website in which the called party consented to future contact from any unspecified individual in order to sidestep the National DNC registry or pre-recorded call requirements for any seller it subsequently engages with. Indeed, another court examining similar "opt in" language on a similar website in a case concerning calls made by a vendor held that such language does not constitute prior express written consent under the TCPA. *See Williams v. Pillpack, LLC,* 2021 U.S.Dist. LEXIS 27496 *14-15 (W.D.WA. February 12, 2021) (certifying a TCPA class action and noting the TCPA

12

disclosure relied upon did not disclose the defendant as the "seller").

Recognizing the strict requirement that a consumer must be specifically informed of any entity that is going to be contacting a number that a consumer has placed on the National Do Not Call Registry, a Court has entered partial summary judgment *on behalf of a plaintiff* on identical "Marketing Partners" language as the website allegedly visited here in *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *20-25 (D. Mass. Dec. 3, 2021):

> Even if plaintiff had visited the Snappy Auto website … [t]he consent form that defendant claims supplied plaintiff's consent was not TCPA-compliant. First, the form does not mention defendant or its clients by name. Defendant cites its 30(b)(6) deponent's statement that the phrase "marketing partners" on that form referred to defendant, but that is contradicted by his further testimony that defendant does not have a contract with the company (AutoInsurQuotes.com) named in the consent form and that he—as defendant's senior manager of data partnerships—had never heard of the company. The form also contained a telephone number for an entity that was not associated with Snappy Auto, AutoInsurQuotes.com, or defendant. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent "must be evidenced by a signed, written agreement *between the consumer and seller"* (emphasis added)); *Mattson v. New Penn Fin.*, No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) ("[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the [*24] *specific* telemarketer that makes the call before the telemarketer can call a number listed on the DNCR." (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii)))….
>
> Accordingly, even assuming plaintiff had visited the website, no reasonable jury would credit defendant's claim to be a "marketing partner" with the company listed on the consent form.

Rex Direct has not produced any valid consent for telemarketing calls made to any putative class member. Indeed, it has only produced evidence of purported consent for one class member, which is invalid and legally insufficient, as described above. It cannot fail to produce otherwise relevant information on this basis.

13

Similarly, a sample of that data will not permit the plaintiff to prepare for class certification and trial. Rex Direct has made no showing on the specific cost of completing the whole production, which should be necessary before sampling can be considered. Indeed, another Court in this District compelled the same critical documents in a TCPA case in *Perrong v. Victory Phones, LLC*, Civil Action No. 20-cv-5317, ECF No. 68 (E.D. PA., April 5, 2022), and in that case the defendant supplied an affidavit stating that the cost of retrieval of the calling data was approximately $43,000. *Id.* No such showing has been made here to justify not providing the complete discovery responses. Rex Direct's sampling proposal is also problematic in that it doesn't include a date by which the complete data will be produced. Indeed, to the extent that Rex Direct is claiming that such information can be produced after class certification, that would be inconsistent with the Court's single discovery schedule, as discussed above.

**Conclusion**

For the reasons explained above, Plaintiff respectfully request that the Court enter an Order:

A.    Granting this Motion;

B.    Compelling Rex Direct Marketing to provide the requested information; and

C.    Providing such other and further relief as the Court deems appropriate.


Dated: June 30, 2023                         Plaintiff,
                                             By Counsel,

                                             By: */s/ Anthony Paronich*
                                             Anthony I. Paronich
                                             Paronich Law, P.C.
                                             350 Lincoln Street, Suite 2400
                                             Hingham, MA 02043
                                             (617) 485-0018
                                             anthony@paronichlaw.com

14

*Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 30, 2023, the foregoing was served via electronic mail on counsel for the Defendant in the underlying action.

*/s/ Anthony Paronich*
Anthony I. Paronich